UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
APOLONIO JIMENEZ ESCOBAR,                            :
:
                                   Plaintiff,        :
:
                -v-                                  :
:
FRESNO GOURMET DELI CORP. and JOHN DOES              :
1–3.,                                                :
:
                                   Defendants.       :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  12-2-16

16 Civ. 6816 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On October 31, 2016, the parties to this Fair Labor Standards Act ("FLSA") action

applied for approval of a proposed settlement agreement.  They filed the proposed settlement

agreement, Dkt. 6, Ex. 1 ("Agreement"); a joint motion seeking approval and dismissal of

plaintiff Apolonio Jimenez Escobar's claims with prejudice, Dkt. 6 ("Motion"); a notice of

voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i) signed by plaintiff's

counsel, Dkt. 6, Ex. 3; and a schedule of the hours plaintiff's counsel worked, Dkt. 6, Ex. 2

("Fees Schedule").  For the reasons that follow, the Court approves the Agreement.

**I.      Background**

Between February 2012 and August 7, 2016, Escobar was employed by defendants as a

"deli man," general helper, and cleaner at their deli, Fresno Gourmet Deli, located at 27 Avenue

C in Manhattan.  Dkt. 1 ("Complaint"), ¶¶ 8, 12–13.  On August 30, 2016, Escobar brought this

action.  He brings claims under the FLSA and the New York Labor Law ("NYLL") seeking

unpaid overtime, and statutory penalties under the New York Wage Theft Prevention Act.  *Id.* ¶¶

21–46. On September 22, 2016, Escobar filed an affidavit reflecting service on defendants on

September 9, 2016.  Dkt. 5.  Defendants have not responded to the complaint or otherwise appeared.  Escobar has not sought a certificate of default from the Clerk of Court.

Under the Agreement, defendants are to pay Escobar a total of $25,000 across five equal monthly installments, with the first payment due within 10 days of the Court's approval of the Agreement.  Agreement ¶ 1.  Of that amount, Escobar is to retain two-thirds, or $16,666, and his counsel is to retain one-third, or $8,334.  *See* Motion at 3–4; Agreement ¶ 1(d).  In exchange, Escobar agrees to release defendants from all FLSA and NYLL claims, "in particular any claim for unpaid wages, minimum wages, overtime compensation, spread of hours premiums, liquidated damages, statutory penalties, and other related penalties, as well as all attorneys' fees and costs."  Agreement ¶ 2.

## II.     Discussion

### A.      Approval of the Settlement Agreement

Under the FLSA, an employer that fails to pay required minimum or overtime wages "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  Instead, they must satisfy the Court that their agreement is "fair and reasonable."  *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the

parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of an arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc'y*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

Factors that weigh against settlement approval "include the following: (1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that a claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Id.* at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).  Courts in this Circuit also commonly decline to approve settlements containing unjustified confidentiality provisions, overbroad non-disparagement provisions, or general release provisions that extend beyond the claims at issue in the lawsuit.  *See Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *1–2 (S.D.N.Y. Jan. 15, 2016) (collecting cases).

Having considered the relevant factors, the Court finds they support approval of the Agreement in this case.

First, the $25,000 settlement amount constitutes a substantial amount of what Escobar estimates he is owed.  Although Escobar was paid in cash and defendants did not maintain adequate payroll records, Escobar's counsel represents "it would be fair to assume" that Escobar is owed $21,000, representing an estimated 28 hours of overtime per week over the course of 150

work weeks, with an overtime premium deficiency of $5 per hour. Motion at 2. Although the $25,000 settlement amount does not reflect most potential liquidated damages, *id.* at 3, it is a significant portion of Escobar's potential recovery.

Second, the settlement will save the parties time and expense. This case has not proceeded to formal discovery. The settlement will allow the parties to avoid the costs of document exchanges, depositions, motion practice, and, potentially, trial.

Third, Escobar would face significant litigation risks were he to proceed to trial. Defendants dispute that Escobar worked as many hours as he claims and maintain that he was paid the required overtime premium. *Id.* at 2. And, because Escobar was paid in cash and defendants did not maintain adequate time records, Escobar's ability to prove all the hours he claims to have worked would depend largely on his credibility at trial. *Id.* There is also a risk that Escobar would not have been awarded statutory liquidated damages. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("[D]istrict courts [have] discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith.'" (citing 29 U.S.C. § 260)); *cf. Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505–06 (S.D.N.Y. 2015) (collecting cases holding that plaintiffs are entitled to only one set of liquidated damages). Further, defendants represented to plaintiff's counsel that they would likely default in the action instead of incur the costs to defend against it, costs that defendants believe may exceed any realistic damages award. Motion at 2–3. Defendants also credibly represented to plaintiffs' counsel that they would be unable to obtain counsel to defend this case. *Id.* at 3. These give rise to bona fide concerns about Escobar's ability to collect, and "militate[] in favor of finding a settlement reasonable." *Lliguichuzhca v.*

*Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); *accord Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015).

Regarding the fourth and fifth factors, there are no signs of fraud or collusion. The Agreement appears to be the result of arm's-length negotiations at which Escobar was represented by competent, experienced counsel who sought an early settlement in order to avoid a default by defendants. *See* Motion at 3. The Agreement was reached after several meetings plaintiff's counsel had with Escobar and with the defendants, including the owner of Fresno Gourmet Deli, and after plaintiff's counsel visited the deli himself. *Id.* These meetings surely helped inform the parties of the strengths and weaknesses of their positions, and of the risks of collectability if defendants were to default. And, because Escobar no longer works for defendants, Complaint ¶¶ 12–13, the Court has little concern that defendants used improper leverage to secure this settlement. *See Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the defendant").

Finally, no factor that weighs against settlement appears present. First, the Court is not aware of other employees in the same position as Escobar, who, as the sole plaintiff, will be the only employee affected by the settlement and dismissal of this lawsuit. *See Penafiel*, 2015 WL 7736551, at *2 (fact that "no other employee ha[d] come forward" supported settlement approval); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986 (PAE), 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same). Second, there is no indication of a pattern of FLSA violations by defendants or a likelihood that Escobar's circumstances will recur. Third, Escobar's complaint does not appear to involve any novel factual or legal issues that would, if resolved by the Court, further the development of the law in this area. Fourth, the Agreement contains a

release narrowly tailored to Escobar's wage-and-hour claims.  Agreement ¶ 2; *see Martinez*, 2016 WL 206474, at *2 ("Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).  Fifth, the Agreement does not contain a confidentiality or non-disparagement provision.  *See Lopez*, 96 F. Supp. 3d at 177–81 (discussing why confidentiality provisions are in tension with FLSA's remedial purposes); *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (overbroad non-disparagement provision "contravenes the remedial purposes of the [FLSA]") (internal quotation marks and citation omitted).

Therefore, having considered the totality of the circumstances, the Court finds the Agreement fair and reasonable.

### B.      Approval of Attorney's Fees

Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorney's fees and costs incurred in successfully prosecuting wage-and-hour actions. *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012); *see* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee [under the NYLL] in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees.").  "Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees."  *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634–35 (S.D.N.Y. 2015); *see also Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470,

474 (S.D.N.Y. 2009) ("[T]he fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken [plaintiff's] claim to fees." (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980))).

Here, the Agreement allocates one third, or $8,334, of the total $25,000 settlement to Escobar's counsel, Cilenti & Cooper, PLLC.  Agreement ¶ 1(d).  Escobar's counsel are not requesting a separate reimbursement of the costs incurred in this case.  Motion at 4.  This fee, which accounts for one third of the total settlement amount, is consistent with "contingency fees that are commonly accepted in the Second Circuit in FLSA cases."  *Najera v. Royal Bedding Co., LLC*, No. 13 Civ. 1767 (NGG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *cf. Beckert v. Rubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) ("[W]hen awarding attorneys' fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement *net* of costs.").  Regardless, the Court must independently ascertain the reasonableness of the fee request.  *Penafiel*, 2015 WL 7736551, *2 (citing 29 U.S.C. § 216(b) (allowing "a *reasonable* attorney's fee") (emphasis in *Panafiel*)).

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted).  As to the reasonable hourly rate, the Court's analysis is guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The relevant community is this

District.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182,

190–91 (2d Cir. 2008).

Plaintiff's counsel, Peter H. Cooper, Esq., has provided time records documenting his

work on this case.  *See* Fees Schedule.  The Fees Schedule indicates that Cooper worked 22

hours on this case at a billing rate of $400 per hour.  It also indicates that another employee of

Cooper's firm, identified only by the initials "JP," who appears to have undertaken paralegal or

legal assistant work, worked five hours on the case at a billing rate of $100 per hour.  These rates

and hours worked result in a total proffered lodestar of $9,300.

Regrettably, Cooper did not separately provide the Court with a summary of his

qualifications and experience handling wage-and-hour cases, or the qualifications and experience

of "JP," or otherwise explain his $400 per hour billing rate or "JP's" $100 per hour billing rate.

And, Cooper's $400 per hour rate is at the high end of the range of charged by attorneys in wage-

and-hour cases.  *See Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL

4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (collecting cases that approved hourly rates of $300–

$400 in FLSA actions).  Further, other courts in this district have recently declined to credit

Cooper's proffered billing rate of $400 per hour, finding that rate too high.  *Vasquez v. TGD

Grp., Inc.*, No. 14 Civ. 7862 (RA), 2016 WL 3181150, at *4–5 (S.D.N.Y. June 3, 2016) ("This

Court recently concluded that Mr. Cooper's proposed rate of $400 is too high." (citing *Lazaro-

Garcia*, 2015 WL 9162701, at *4)).  In *Vasquez*, the court concluded "that a reasonable hourly

rate for Mr. Cooper is $350 per hour and that a reasonable hourly rate for [paralegal or legal

assistant work at his firm] is $75 per hour."  *Vasquez*, 2016 WL 3181150, at *4.  In *Lazaro-

Garcia*, the court noted that Cooper has been litigating wage-and-hour cases since 2009, though

has practiced law for longer.  *Lazaro-Garcia*, 2015 WL 9162701, at *4.

8

Accordingly, because Cooper did not provide any summary or explanation of his qualifications and experience litigating wage-and-hour cases that conceivably might have persuaded the Court to approve a higher hourly rate than other courts in this district have recently approved for him, the Court adopts $350 per hour as Cooper's reasonable hourly rate in this case and $75 per hour as the reasonable hourly rate for "JP." These lead to a lodestar calculated using a $350 per hour rate for 22 hours for Cooper's work and a $75 per hour rate for 5 hours for "JP's" work, for a total modified lodestar of $8,075. In the future, the Court directs Cooper to provide a summary of his qualifications and experience handling wage-and-hour cases, along with the qualifications and experience of any other employees of his firm whose time he seeks to incorporate into his attorney's fees award. The Court further expects Cooper to alert reviewing courts to recent cases in which he has been awarded attorney's fees in which his hourly billing rate for lodestar calculation purposes was set by the court.

The Court does, however, find that Cooper's Fee Schedule reflects sound billing practices. It is sufficiently thorough, detailed, easy to understand, and does not reveal duplication of effort. As such, the Court finds the modified lodestar of $8,075 accurate.

The $8,334 fee award contemplated by the Agreement represents approximately a 1.03 multiplier of the modified lodestar. Having considered (1) the quality of the representation, (2) the magnitude of the settlement award, (3) the time and effort plaintiff's counsel spent litigating this action and securing settlement, and (4) the considerable risk involved with taking this case on a contingency fee basis, the Court finds this award fair, reasonable, and in line with fees routinely approved in this District. *See Sakiko Fujiwara v. Sushi Yashuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding fee constituting 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately" for

"the risk associated with contingent fees in FLSA cases"); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 WL 4006896, at *10–12 (S.D.N.Y. July 1, 2016) (finding "award of $105,000 or one-third of the fund—a 1.68 multiplier of the lodestar calculation and 1.52 multiplier of plaintiffs' counsel's stated hourly rates"—reasonable in light of quality of counsel, time and labor expended, risks of litigation, and litigation's magnitude and complexity); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *14 (S.D.N.Y. Sept. 22, 2015) (finding multiplier of 1.08 "quite low relative to the multipliers in many cases in which fees have been approved in this District").

Therefore, the Court finds the Agreement's provision for attorney's fees fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Court approves the parties' settlement agreement, pursuant to which Escobar is to recover two thirds, or $16,666, and his counsel is to retain one third, or $8,334. This action is hereby dismissed with prejudice, and the Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 2, 2016
New York, New York